**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

CORY ROSS,

        Plaintiff,

v.

JOSEPH HOWARD BLANDING, JR.,
FUEL SOUTH EXPRESS, LLC, and
CIRCLE K STORES, INC.,

        Defendants.

C/A No. <u>3:26-cv-3441-SAC</u>

**COMPLAINT**

**(Jury Trial Demanded)**

Plaintiff Cory Ross, complaining of the Defendants above named, alleges as follows:

## I. PARTIES

1.  Plaintiff Cory Ross ("Plaintiff") is a citizen and resident of Lexington County, South Carolina, and was at all times relevant hereto. Plaintiff is therefore a citizen of the State of South Carolina for purposes of 28 U.S.C. § 1332.

2.  Defendant Joseph Howard Blanding, Jr. ("Blanding") is, upon information and belief, a citizen and resident of Gaston County, North Carolina, and at all times relevant hereto held or was required to hold a commercial driver's license authorizing the operation of a commercial motor vehicle transporting hazardous materials.  Blanding is therefore a citizen of the State of North Carolina for purposes of 28 U.S.C. § 1332.

3.  Defendant Fuel South Express, LLC ("Fuel South") is, upon information and belief, a limited liability company organized and existing under the laws of the State of Texas,

1

with its principal place of business located at 2929 Allen Parkway, Houston, Texas. Upon information and belief, each member of Fuel South Express, LLC is a citizen of the State of Texas, and no member of Fuel South is a citizen of the State of South Carolina. Fuel South is therefore a citizen of the State of Texas for purposes of 28 U.S.C. § 1332. Fuel South may be served through its registered agent, Corporation Service Company, 100 Coastal Drive, Suite 210, Charleston, South Carolina 29492.

4.    At all times relevant hereto, Fuel South was a for-hire motor carrier operating in interstate and/or intrastate commerce under USDOT No. 362702 and MC No. MC-264276, engaged in the business of transporting gasoline, diesel fuel, and other flammable petroleum products in bulk over the public highways of South Carolina.

5.    Defendant Circle K Stores, Inc. ("Circle K") is a corporation organized and existing under the laws of the State of Texas, with its principal place of business and corporate headquarters located at 1130 West Warner Road, Building B, Tempe, Arizona 85284. Circle K is therefore a citizen of the State of Texas and of the State of Arizona for purposes of 28 U.S.C. § 1332, and is not a citizen of the State of South Carolina. Circle K is authorized to transact business in South Carolina, regularly and systematically conducts business in this Division through its retail fuel and convenience store locations, and may be served through its registered agent, Corporation Service Company, 100 Coastal Drive, Suite 210, Charleston, South Carolina 29492.

6.    Upon information and belief, at all times relevant hereto, Fuel South contracted exclusively with Circle K to transport, haul, and deliver motor fuel and other petroleum products to Circle K's retail locations, including locations within the State of South Carolina,

2

and Fuel South's hauling operations were performed for the benefit of, at the direction of, and subject to the control of Circle K.

## II. JURISDICTION AND VENUE

7. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1). Plaintiff is a citizen of the State of South Carolina. Defendant Blanding is a citizen of the State of North Carolina. Defendant Fuel South is a citizen of the State of Texas. Defendant Circle K is a citizen of the States of Texas and Arizona. No Defendant is a citizen of the same State as Plaintiff, and complete diversity of citizenship therefore exists between Plaintiff and each Defendant.

8. The matter in controversy exceeds the sum or value of Seventy-Five Thousand and 00/100 ($75,000.00) Dollars, exclusive of interest and costs.

9. This Court has personal jurisdiction over each Defendant. Each Defendant purposefully availed itself of the privilege of conducting activities within the State of South Carolina, transacted business within this State, committed and/or caused tortious injury by act or omission within this State, and derived substantial revenue from goods used or consumed and services rendered within this State. See S.C. Code Ann. § 36-2-803. The collision giving rise to this action occurred within the State of South Carolina.

10. Venue is proper in this Division pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this

Division. Assignment to the Columbia Division is proper under Local Civil Rule 3.01 (D.S.C.).

### III. FACTUAL ALLEGATIONS

#### A. The Collision

11.    On or October 21, 2024, at approximately 8:20 p.m., Plaintiff was lawfully operating a 2018 GMC pick up traveling east on SC 6, or, S. Lake Drive, in Lexington County, South Carolina.

12.    At the same time and place, Blanding was operating a 2024 Volvo truck-tractor bearing Indiana license plate 3504375, in combination with a cargo tank semi-trailer (collectively the "Tanker"), which was owned, leased, maintained, dispatched, and/or otherwise controlled by Fuel South, and was also traveling east on SC 6, or, S. Lake Drive, in Lexington County, South Carolina.

13.    At the time of the collision, the Tanker was loaded with, had recently transported, or was en route to load gasoline, diesel fuel, and/or other flammable petroleum products, and was being operated at or near its maximum permissible gross vehicle weight.

14.    At all times relevant hereto, Blanding was acting within the course and scope of his employment and/or agency with Fuel South, was performing work in furtherance of Fuel South's business, and was operating the Tanker with the express or implied knowledge, permission, and consent of Fuel South.

15.    At all times relevant hereto, Blanding was transporting or preparing to transport fuel for delivery to one or more Circle K retail locations pursuant to the exclusive transportation arrangement between Fuel South and Circle K described above.

16. Without warning and in disregard for the safety of others lawfully using the roadway, including Plaintiff, Blanding failed to keep a proper lookout, failed to yield the right of way, made an unsafe and illegal lane change, failed to maintain his lane of travel, and ran Plaintiff and Plaintiff's vehicle off the road, resulting in a collision. (the "Collision").

17. The Collision and Plaintiff's resulting injuries and damages were caused solely and proximately by the negligent, grossly negligent, and reckless acts and omissions of the Defendants, and were in no way caused or contributed to by any act or omission on the part of Plaintiff.

18. As a direct and proximate result of the Collision, Plaintiff sustained severe, painful, and permanent bodily injuries, has incurred and will continue to incur substantial medical expenses, has suffered and will continue to suffer physical pain, mental anguish, and loss of the enjoyment of life, has sustained lost wages and a diminished capacity to earn, and has otherwise been damaged as set forth more fully below.

### B. Fuel South's Conduct

19. At all times relevant hereto, Fuel South was a motor carrier subject to the Federal Motor Carrier Safety Regulations, 49 C.F.R. Parts 40, 382, 383, 387, and 390 through 399, and to the statutes and regulations of the State of South Carolina incorporating and adopting the same.

20. Upon information and belief, before and at the time it hired Blanding and placed him behind the wheel of a fully loaded fuel tanker, Fuel South failed to obtain, review, and evaluate Blanding's driving record, employment history, prior employer safety performance history, Pre-Employment Screening Program report, road test results, and controlled-

substance and alcohol testing history as required by 49 C.F.R. §§ 40.25, 391.21, 391.23, 391.25, and 391.31.

21.    Upon information and belief, Fuel South failed to provide Blanding with adequate training regarding the safe operation of a tank vehicle, the effects of liquid surge on vehicle handling and stopping distance, defensive driving, space and following-distance management, speed management, hazard perception, fatigue management, and hours-of-service compliance.

22.    Upon information and belief, Fuel South failed to adequately supervise and monitor Blanding's driving performance, including by failing to review and audit his records of duty status and electronic logging device data, failing to monitor telematics, speed, and hard-braking events, failing to conduct annual reviews of his driving record as required by 49 C.F.R. § 391.25, and failing to take corrective action in response to known safety violations.

23.    Upon information and belief, Fuel South knew or, in the exercise of reasonable care, should have known that Blanding was unfit to operate a commercial motor vehicle transporting flammable liquids, yet continued to employ, dispatch, and entrust the Tanker to him.

24.    Upon information and belief, Fuel South maintained inadequate safety management controls, dispatch practices, scheduling practices, and compensation structures that encouraged or required its drivers, including Blanding, to operate at unsafe speeds, to drive while fatigued, and/or to exceed the hours-of-service limitations in order to meet delivery windows.

### C. Circle K's Conduct

25. Upon information and belief, Circle K selected, engaged, and retained Fuel South as the exclusive motor carrier responsible for transporting and delivering motor fuel to Circle K retail locations, including the delivery being performed at the time of the Collision.

26. Upon information and belief, Circle K retained and exercised control over material aspects of the transportation performed by Fuel South and its drivers, including without limitation the assignment of loads, delivery locations, delivery schedules and time windows, routing, dispatch and communication protocols, required equipment and appearance standards, safety and compliance requirements, and the right to require corrective action, including the right to demand the removal of drivers from Circle K work.

27. The transportation of gasoline and other flammable liquids in bulk cargo tanks over the public highways is an inherently and intrinsically dangerous activity that poses a foreseeable risk of catastrophic harm to the motoring public, giving rise to duties that Circle K owed and could not delegate.

28. Before engaging Fuel South and throughout the course of their relationship, Circle K had ready access to information bearing on Fuel South's fitness as a motor carrier, including publicly available Federal Motor Carrier Safety Administration data through the SAFER system and the Safety Measurement System (including Behavior Analysis and Safety Improvement Category percentile rankings), operating authority and insurance filings, crash and inspection histories, out-of-service rates, safety ratings, and information obtainable through carrier qualification questionnaires, audits, and third-party carrier vetting services.

29. Upon information and belief, Circle K knew or, in the exercise of reasonable care, should have known that Fuel South lacked adequate safety management controls, driver qualification procedures, driver training programs, supervision and monitoring practices, maintenance programs, and/or financial responsibility to safely perform the hauling of flammable fuel entrusted to it.

30. Upon information and belief, Circle K failed to conduct any reasonable investigation, vetting, or qualification of Fuel South before entrusting it with the transportation of flammable fuel on public highways; failed to establish and enforce minimum safety criteria for its contracted carriers; failed to audit or periodically re-evaluate Fuel South's safety performance; failed to require and verify adequate insurance and financial responsibility; and failed to terminate or suspend Fuel South after it knew or should have known of Fuel South's unfitness.

## COUNT I

**Negligence, Gross Negligence, Recklessness, Willfulness, and Wantonness**
**(Against Defendant Joseph Howard Blanding, Jr.)**

31. Plaintiff realleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

32. At all times relevant hereto, Blanding owed Plaintiff and other members of the motoring public a duty to exercise due care in the operation of the Tanker, and a heightened degree of care commensurate with the size, weight, and hazardous cargo of the vehicle he was operating.

8

33. Blanding breached the duties owed to Plaintiff and was negligent, grossly negligent, and reckless in one or more of the following particulars:

(a)    In failing to keep a proper lookout for other vehicles lawfully using the roadway;

(b)    In failing to maintain proper and adequate control of the Tanker;

(f)    In failing to maintain a single lane of travel and in changing lanes when such movement could not be made with safety, in violation of S.C. Code Ann. §§ 56-5-1900 and 56-5-2150;

(g)    In failing to yield the right of way;

(h)    In failing to give an adequate and timely warning of his approach;

(i)    In operating the Tanker while fatigued and/or while ill or otherwise impaired to a degree rendering it unsafe for him to drive, in violation of 49 C.F.R. § 392.3;

(j)    In operating the Tanker in excess of the hours-of-service limitations and in failing to maintain accurate records of duty status, in violation of 49 C.F.R. Part 395;

(k)    In operating the Tanker while distracted, including through the use of a hand-held mobile telephone or texting while driving, in violation of 49 C.F.R. §§ 392.80 and 392.82 and S.C. Code Ann. § 56-5-3890;

(l)    In failing to perform an adequate pre-trip inspection of the Tanker and in operating a vehicle in a condition likely to cause an accident, in violation of 49 C.F.R. §§ 392.7 and 396.13;

(m)    In failing to account for the effects of liquid surge, increased stopping distance, and reduced maneuverability inherent in the operation of a loaded cargo tank vehicle;

(n)    In operating a commercial motor vehicle for which he was not qualified, in violation of 49 C.F.R. Part 391;

(o)    In failing to comply with the applicable laws, ordinances, and regulations of the State of South Carolina, in violation of 49 C.F.R. § 392.2; and

(p)    In otherwise failing to use that degree of care and caution that a reasonable and prudent commercial driver would have used under the same or similar circumstances.

34. The statutes and regulations identified above were enacted for the protection of Plaintiff and the class of persons of which Plaintiff is a member, and to prevent the type of harm Plaintiff suffered. Blanding's violations thereof constitute negligence per se.

35. As a direct and proximate result of Blanding's negligence, gross negligence, and recklessness, Plaintiff suffered the injuries and damages described herein.

## COUNT II

**Respondeat Superior and Vicarious Liability**
**(Against Defendant Fuel South Express, LLC)**

36. Plaintiff realleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

37. At all times relevant hereto, Blanding was an employee, agent, servant, and/or statutory employee of Fuel South as that term is defined in 49 C.F.R. § 390.5, was acting within the course and scope of that employment and agency and was acting in furtherance of Fuel South's business interests.

38. Fuel South is therefore vicariously liable, under the doctrine of respondeat superior and under principles of agency, for all negligent, grossly negligent, and reckless acts and omissions of Blanding described herein.

39. Alternatively, and to the extent Blanding is characterized as an independent contractor or as the employee of any entity other than Fuel South, Fuel South remains liable for his conduct by virtue of its federally granted operating authority, its right of control over the manner and means of the transportation, its lease or use of the equipment involved, and the non-delegable duties imposed upon it as a motor carrier.

40. As a direct and proximate result of the conduct for which Fuel South is vicariously liable, Plaintiff suffered the injuries and damages described herein.

## COUNT III

### Negligent Hiring, Training, Supervision, Retention, and Entrustment
### (Against Defendant Fuel South Express, LLC)

41. Plaintiff realleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

42. Fuel South owed an independent, direct, and non-delegable duty to the motoring public, including Plaintiff, to exercise reasonable care in the hiring, qualification, training, supervision, monitoring, retention, dispatch, and entrustment of the drivers to whom it committed the operation of heavy commercial vehicles transporting flammable liquids. This duty exists independently of, and is not extinguished by, any admission of agency or vicarious liability.

43. Fuel South breached that duty and was negligent, grossly negligent, reckless, willful, and wanton in one or more of the following particulars:

(a) In hiring Blanding without conducting an adequate investigation of his driving record, employment history, prior employer safety performance history, and qualifications;

(b) In failing to obtain, review, and maintain a driver qualification file in compliance with 49 C.F.R. Part 391;

(c) In failing to conduct required pre-employment and ongoing controlled-substance and alcohol testing in compliance with 49 C.F.R. Part 382 and 49 C.F.R. § 40.25;

(d) In hiring and retaining a driver it knew or should have known was unfit, unqualified, and a danger to the motoring public;

(e) In failing to provide adequate initial and continuing training regarding the safe operation of cargo tank vehicles, liquid surge, stopping distances, defensive driving, hazard perception, speed and space management, and fatigue management;

(f) In failing to adequately supervise and monitor Blanding's on-road performance, including his speed, hours of service, records of duty status, electronic logging device data, and telematics data;

(g)   In failing to conduct and document annual reviews of Blanding's driving record as required by 49 C.F.R. § 391.25;

(h)   In failing to take timely and appropriate corrective or disciplinary action in response to known or knowable safety violations;

(i)   In entrusting a loaded fuel tanker to a driver whom it knew or should have known was incompetent, unqualified, reckless, or otherwise unfit to operate it;

(j)   In establishing and enforcing dispatch schedules, delivery windows, route assignments, and compensation practices that encouraged or required unsafe driving, including speeding and driving while fatigued;

(k)   In failing to implement, maintain, and enforce adequate safety management controls, written safety policies, and compliance programs; and

(l)   In otherwise failing to exercise reasonable care in the operation of its motor carrier business.

44.   As a direct and proximate result of Fuel South's independent negligence, gross negligence, recklessness, willfulness, and wantonness, Plaintiff suffered the injuries and damages described herein.

## COUNT IV

### Negligent Selection, Vetting, and Retention of Motor Carrier
### (Against Defendant Circle K Stores, Inc.)

45.   Plaintiff realleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

46.   By selecting and engaging a motor carrier to transport gasoline and other flammable liquids in bulk over the public highways of South Carolina, Circle K undertook and owed a duty to the motoring public, including Plaintiff, to exercise reasonable care in the selection, vetting, qualification, monitoring, and retention of that carrier.

47.   That duty was heightened by the inherently and intrinsically dangerous nature of the activity entrusted to Fuel South, by Circle K's exclusive and ongoing relationship with

Fuel South, and by the control Circle K retained over the manner, timing, and performance of the transportation.

48.    Circle K breached that duty and was negligent, grossly negligent, reckless, willful, and wanton in one or more of the following particulars:

(a)    In selecting and engaging Fuel South as its exclusive fuel-hauling carrier without conducting a reasonable investigation of Fuel South's safety record, safety rating, crash history, inspection and out-of-service history, and compliance history;

(b)    In failing to review readily available Federal Motor Carrier Safety Administration data, including SAFER records and Safety Measurement System and Behavior Analysis and Safety Improvement Category rankings, before and during its engagement of Fuel South;

(c)    In failing to establish, communicate, and enforce reasonable minimum safety qualification criteria for the carriers it engaged to haul flammable fuel;

(d)    In failing to require, obtain, and verify evidence of Fuel South's driver qualification procedures, driver training programs, supervision and monitoring practices, drug and alcohol testing program, maintenance program, and hours-of-service compliance;

(e)    In failing to require, obtain, and verify evidence of adequate insurance coverage and financial responsibility commensurate with the risk of transporting flammable liquids;

(f)    In failing to audit, monitor, or periodically re-evaluate Fuel South's safety performance during the course of the parties' relationship;

(g)    In retaining and continuing to use Fuel South after Circle K knew or, in the exercise of reasonable care, should have known that Fuel South was unfit, unqualified, and a danger to the motoring public;

(h)    In imposing delivery schedules, delivery windows, load assignments, and performance requirements that Circle K knew or should have known could not be safely met and that encouraged unsafe driving practices;

(i)    In failing to exercise the control it retained over the transportation in a reasonably safe manner; and

(j)    In otherwise failing to exercise reasonable care under the circumstances.

49. As a direct and proximate result of Circle K's negligence, gross negligence, recklessness, willfulness, and wantonness in selecting, vetting, and retaining Fuel South, Plaintiff suffered the injuries and damages described herein.

**COUNT V**

**Vicarious Liability — Agency, Retained Control, Apparent Agency, and Non-Delegable Duty (Pleaded in the Alternative) (Against Defendant Circle K Stores, Inc.)**

50. Plaintiff realleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

51. In the alternative, and to the extent the evidence establishes that Circle K retained the right to control the manner and means by which Fuel South and Blanding performed the transportation of fuel, Fuel South and Blanding were the agents, servants, and/or employees of Circle K, and Circle K is vicariously liable for their negligent, grossly negligent, reckless, willful, and wanton acts and omissions.

52. In the further alternative, Circle K held Fuel South and its drivers out to the public as its agents, including through the use of Circle K branding, trade dress, or markings on the equipment used to deliver fuel, and Plaintiff and the public reasonably relied upon that holding out, rendering Circle K liable under the doctrine of apparent agency.

53. In the further alternative, because the bulk transportation of gasoline and other flammable liquids over public highways is an inherently and intrinsically dangerous activity, the duty to ensure that such transportation was conducted with reasonable care was non-

delegable, and Circle K may not escape liability by delegating that activity to an independent contractor.

54.    As a direct and proximate result of the conduct for which Circle K is vicariously liable, Plaintiff suffered the injuries and damages described herein.

## IV. DAMAGES

55.    Plaintiff realleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

56.    As a direct and proximate result of the negligent, grossly negligent, reckless, willful, and wanton acts and omissions of Defendants, Plaintiff has suffered and is entitled to recover actual and consequential damages, including but not limited to:

(a)    Past medical, hospital, surgical, diagnostic, pharmaceutical, rehabilitative, and related expenses;

(b)    Future medical and related expenses reasonably certain to be incurred;

(c)    Past lost wages and lost earnings;

(d)    Future lost earnings and the permanent impairment of Plaintiff's capacity to earn a living;

(e)    Past and future physical pain and suffering;

(f)    Past and future mental anguish, emotional distress, and inconvenience;

(g)    Permanent physical impairment, disability, disfigurement, and scarring;

(h)    Past and future loss of the enjoyment of life;

(i)    Property damage, diminution in value, and loss of use; and

(j)    All other incidental and out-of-pocket expenses proximately caused by the Collision.

57.    The acts and omissions of Defendants described herein were willful, wanton, reckless, and carried out with a conscious disregard for the rights and safety of Plaintiff and the motoring public. Plaintiff is therefore entitled to recover punitive damages in an amount

sufficient to punish Defendants and to deter Defendants and others similarly situated from like conduct in the future, as proven by clear and convincing evidence pursuant to S.C. Code Ann. § 15-33-135.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Cory Ross prays for judgment against Defendants Joseph Howard Blanding, Jr., Fuel South Express, LLC, and Circle K Stores, Inc., jointly and severally, as follows:

(a) For actual, compensatory, and consequential damages in an amount to be determined by the trier of fact;

(b) For punitive damages in an amount to be determined by the trier of fact;

(c) For the costs and disbursements of this action;

(d) For prejudgment and post-judgment interest as allowed by law; and

(e) For such other and further relief as this Court deems just and proper.

## VI. DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

s/ *Joseph E. Thoensen*
Joseph E. Thoensen (Fed. ID No. 9452)
The Jeffcoat Firm
1333 Main Street, Suite 510
Columbia, South Carolina 29201
Telephone: (803) 200-2000
Email: joe.thoensen@thejeffcoatfirm.com

**ATTORNEYS FOR PLAINTIFF**

Columbia, South Carolina
August 13, 2026

17